1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11

AQUARIAN FOUNDATION, a nonprofit
Corporation Pursuant to the laws of the State
of Washington,

Case No. C19-1879RSM

12

Plaintiff,

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

13

v.

14
15

BRUCE KIMBERLY LOWNDES a/k/a
Sankacharya Sunkara,

16

17
Defendant.

18

I.      INTRODUCTION

19

A remote bench trial was held in this matter on May 23, 25, and 26, 2022, with live

20

testimony and exhibits submitted by both parties.  Dkts. ##237–239.  The Court previously

21

ruled on summary judgment that Keith Rhinehart's copyrights were transferred to Plaintiff

22

Aquarian Foundation ("AF" or "the Church") through his will.  Dkt. #214. AF presented

23

sufficient evidence of infringement occurring in the United States. *Id.*  The Court dismissed

24

several affirmative defenses related to this infringement. *Id.*

25

26

The remaining issues of law at trial were: 1) whether Defendant Lowndes infringed

27

certain of Plaintiff's registered copyrights in the United States, 2) whether Lowndes had a valid

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

license related to those copyrights, 3) whether AF could terminate the license, 4) whether Lowndes breached the license agreement,  5) whether any of the copyrighted works were "works for hire," 6) what damages should be imposed for copyright infringement, 7) what relief Plaintiff may seek for unregistered "proprietary works," 8) whether Mr. Lowndes infringed Plaintiff's trademark for "Church of Higher Spiritualism," 9) whether Plaintiff's trademark claim is barred by laches, 10) whether Mr. Lowndes engaged in unfair competition and false designation, and 11) whether attorney fees are warranted to either side in this case.  *See* Dkt. #232 at 3–4.[1]

## II.    CREDIBILITY OF THE WITNESSES

"In an action tried on the facts without a jury... the court must find the facts specially and state its conclusions of law separately."  Fed. R. Civ. P. 52(a).  The trial court is empowered to judge the credibility of the witnesses.  *See Spokane Arcade, Inc. v. City of Spokane*, 75 F.3d 663, 665 (9th Cir. 1996); *Zivkovic v. S. Cal. Edison Co.*, 105 Fed. Appx. 892, 893 at n.1 (9th Cir. 2004) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985)).

This was a highly unusual case in that it lacked significant credible testimony of any kind.  The key witnesses in this case were AF president Jannifer Werner, Defendant Lowndes, AF treasurer Cathryn Reid, and handwriting expert Hannah McFarland.  Their answers during direct and cross examination were often incomplete, inconsistent with other testimony or exhibits, or otherwise indicated evasiveness, exaggeration, or dishonesty.  The Court was thus largely unable to rely on the testimony of witnesses when it would be necessary to prove a

---

[1] The parties also raised in their Proposed Pretrial Order several issues of law subsumed by the Court's rulings on the issues above, and the following issues of law: 1) have any of Plaintiff's copyrights expired due to failure to make a timely renewal; 3) which (if any) of the Works were created after the date of the license, June 9, 1985.  *See* Dkt. #232 at 4–5.  The Court finds that these two issues are essentially irrelevant given the Court's rulings, but that in any event insufficient evidence was presented to decide them.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

claim or defense, as stated below.  The Court has attempted to piece together the truth from undeniable facts admitted by both parties and from the exhibits.  Many disputed facts remain unproven.

### III.   FINDINGS OF FACT

The Court incorporates the facts as stated in its prior Summary Judgment Order.  Dkt. #214.   The following additional findings of fact are based upon a preponderance of the evidence presented at trial and the above credibility analysis.

1. Plaintiff, the Aquarian Foundation ("AF" or "the Church") is a non-profit corporation in the State of Washington centered around the spiritual teachings of Keith Milton Rhinehart.  Mr. Rhinehart served as the Church's president and ecclesiastical head for many years until his death in 1999.

2. The current president and ecclesiastical head of the Church is Jannifer Werner.  The Church's treasurer is Cathryn Reid.  The Church also has a board of directors, other officers, and various spiritual leaders.

3. The size of the Church's membership is unclear.  Witnesses Werner and Reid, who would have every reason to know membership information, were evasive under direct questioning by the Court.  The majority of Church members reside in the United States.

4. The Church collects funds through a required membership fee, tithing and donations, as well as fees for access to the teachings of Rhinehart in various media—literature, audio recordings, and video recordings.

5. The Church's annual income was not presented in evidence.  The amount collected for the teachings of Rhinehart is unknown to the Court.  Witnesses Werner and

Reid, who would have every reason to know this information, were evasive under direct questioning by the Court.

6. The copyrighted audio and video recordings of Rhinehart listed in Plaintiff's Exhibit 4 were at issue in this case. These recordings were primarily made in the 1970s and 1980s. Their author is Mr. Rhinehart. It is unclear from the record whether the recordings were always made with the assistance of AF employees or at the behest of the Church, or whether some were at times created by Rhinehart himself or others around him not directly employed by the Church.

7. These recordings were copyrighted by Mr. Rhinehart or his private attorney, with the copyright made under Mr. Rhinehart's name rather than the Church. The filing forms indicate that these were not "works for hire." No other credible evidence indicates these were "works for hire."

8. Defendant Lowndes is a man approximately 80 years of age, currently residing in Tasmania, Australia. Starting in the 1970's, Lowndes devoted much of his time to leading AF spiritual groups in the United States. In this role, Lowndes was given permission by Rhinehart and/or the Church to use certain of the Church's copyrighted works. Lowndes was never involved in AF's corporate structure. He was never an AF employee.

9. Starting in 1985, Mr. Lowndes began transferring and converting tape recordings of Rhinehart's teachings into electronic digital format for easier dissemination on electronic platforms. Mr. Lowndes acquired these recordings either by taking them from open tables at Church events or by writing to AF and having them mailed. It is unclear if Mr. Lowndes was permitted at any time to have possession of all of the

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

materials.  No credible testimony could clarify how Lowndes originally acquired copies of the recordings prior to uploading them to the internet.

10. Mr. Lowndes offered as an exhibit a signed written agreement with Mr. Rhinehart granting him a license to use his copyrighted materials.  Credible testimony and photographs demonstrate that this agreement was created at a time when Mr. Lowndes and Mr. Rhinehart were close acquaintances and Mr. Rhinehart stayed at Mr. Lowndes's residence.  The document appears to be signed by Mr. Lowndes, Mr. Rhinehart, and two witness.  Mr. Lowndes does not recall if the date on the agreement, June 9, 1985, is correct, but testified credibly that the document was created around that time.

11. No credible evidence was presented that approval from the AF Board of Directors was required for Mr. Rhinehart to enter into this license agreement concerning his own copyrighted works.

12. Handwriting expert Hannah McFarland's report states that Mr. Rhinehart's signature on the license agreement is an authentic signature but she testified that it may be a copy.  She was provided two exemplar signatures of Mr. Rhinehart by AF and asked to compare them to the signature on the license.  These exemplar signatures, shown to the Court, appear on blank pages with evidence of a cut-and-paste job and the use of whiteout.  These are obvious red-flags that would lead any reasonable person to question their authenticity.  Wherever these exemplar signatures came from, the Court cannot see when they were made or in what context.  Ms. McFarland's analysis of the Rhinehart signature compared to these exemplars was not credible or useful to the Court.  Testimony about other Rhinehart

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

signatures, such as those found on checks, was not credible or useful to the Court. The checks, offered by AF, suffer from indications that they are not authentic, including the fact that two checks to different recipients carry the same check number.

13. Mr. Lowndes was, for reasons not relevant to this case, removed from membership with the Church in early 1997.

14. Ms. Werner testified that she first learned that Mr. Lowndes was using the term "higher spiritualism" in 1998.

15. Mr. Rhinehart died in April 1999. His estate was closed in 2007.

16. Mr. Lowndes registered the mark "Church of Higher Spiritualism" in Australia in 1999. The registration was not renewed and lapsed in 2003.

17. AF acquired ownership of Rhinehart's copyrights via his will.

18. AF became aware of Defendant Lowndes posting copyrighted Church materials on his own website and social media in 2013 and 2014.

19. Mr. Lowndes and AF corresponded about the posting of copyrighted materials. Mr. Lowndes in 2013 informed AF that he had a license from Mr. Rhinehart. AF sent takedown requests to various websites where Mr. Lowndes had posted this material in 2014.

20. AF and its witnesses vaguely referenced persecution that its members had experienced in the past when the teachings of the Church were publicized by the Seattle Times. No credible evidence of persecution was presented to the Court, either occurring in the past or as a result of Mr. Lowndes's publication of Church materials on any websites.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

21. No evidence of a reduction in Church income as a result of Mr. Lowndes's publication of Church materials was presented.

22. No clear, credible evidence of a reduction in Church membership as a result of Mr. Lowndes's publication of Church materials was presented.

23. No clear, credible evidence of Mr. Lowndes's income from use of the copyrighted materials was presented.

24. AF filed to trademark "Church of Higher Spiritualism" on September 16, 2019. This trademark was registered May 12, 2020. AF did not trademark this term until after it found out that Defendant Lowndes had trademarked a similar term in Australia.

25. AF presented no credible evidence of damages from trademark infringement.

26. This lawsuit was filed by AF on November 19, 2019. Dkt. #1.

27. AF did not seek to formally terminate the license held by Mr. Lowndes until May 7, 2021—18 months into this litigation. When it did so, it purported to make the termination effective immediately.

## IV.   CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and this dispute under federal law.

2. The Court adopts its previous legal rulings as detailed in its prior Summary Judgment Order, Dkt. #214.

3. AF presented sufficient evidence that Defendant Lowndes uploaded registered copyright works owned by AF and posted them on various websites and on social media that could be viewed in the United States. AF has failed to present evidence or

argument supporting its claim for copyright infringement of its non-registered proprietary works.

4. An applicable license may be dispositive of a copyright infringement claim. "Anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in [the Copyright Act] . . . is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S. Ct. 774, 78 L.Ed.2d 574 (1984). Thus, an infringement claim "fails if the challenged use of the work falls within the scope of a valid license." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019).

5. Given the testimony of the witnesses and presentation of admitted exhibits, the Court finds that Defendant Lowndes presented adequate evidence of a license agreement covering the registered copyrighted material at issue in this case. Mr. Rhinehart had the authority to enter into this license agreement concerning his own works. The license was created under suspicious circumstances, and Mr. Lowndes's testimony often lacked credibility or showed indicators of evasiveness or exaggeration. However, these problems are ultimately trumped by the existence of the document itself. Only one possible basis to question its authenticity was identified by AF—issues with Mr. Rhinehart's signature. To the Court's untrained eyes, the signature appears suspiciously similar to other Rhinehart signatures, however expert testimony was required to analyze this issue. As stated above, worthwhile expert testimony did not exist in this case. The Court's lay opinion is that the signature is *close* to appearing to be a photocopy of other Rhinehart signatures, but it is not identical, and in any event Ms. McFarland has stated in her report that it is an authentic Rhinehart signature, even if her live testimony was

ultimately of no value.  The Court is left with no basis to question the signature or the authenticity of the document.

6. The record demonstrates that the copyrighted works authored by Mr. Rhinehart at issue in this case were not "works for hire."

7. AF presented insufficient evidence that it properly terminated the license agreement. The Copyright Act has specific requirements on how, when, and by whom a license may be terminated under these circumstances.  It must be terminated in writing, signed by an authorized representative, and with 2 years advanced notice before the termination becomes effective.  17 U.S.C. § 203.  If the author is dead, the termination right may only be exercised by certain relatives or a personal representative.  The estate of Rhinehart was closed in 2007.  AF presented no credible evidence or argument that it had the authority to terminate the license as an executor, administrator, or personal representative of the estate over a decade after the estate closed.  In any event, AF failed to provide Mr. Lowndes with two years advanced notice.

8. The Court finds that Mr. Lowndes did not breach the license agreement, by, *e.g.*, failing to pass along donations.  AF failed to present credible evidence or testimony as to this issue.

9. Given the existence of a valid license agreement applicable to the works at issue, AF's copyright claims fail.

10. The Court notes that AF has also failed to demonstrate actual damages for copyright infringement or any factual basis to award anything above the minimum statutory damages. The Court as factfinder has not been informed via credible testimony or

admitted exhibits of any harm to Plaintiff caused by the infringement.  The Court finds AF was not harmed by Mr. Lowndes's copyright infringement.

11. "The essence of [a trademark infringement claim] centers on the likelihood of confusion between two marks or products." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 990 (9th Cir. 2009).  Laches is available as an equitable defense to trademark claims and "embodies the principle that a plaintiff cannot sit on the knowledge that another company is using its trademark, and then later come forward and seek to enforce its rights."  *Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 989-90 (9th Cir. 2009).  "To establish that laches bars a claim, a defendant must 'prove both an unreasonable delay by the plaintiff and prejudice to itself.'" *Eat Right Foods Ltd v. Whole Foods Market, Inc.*, 880 F.3d 1109, 1116 (9th Cir. 2018) (quoting *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012)).  "Determining whether a delay was unreasonable requires answering two questions: how long was the delay, and what was the reason for it?" *Id*. (citing *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002)).  "To measure the length of a delay, we start the clock 'when the plaintiff knew (or should have known) of the allegedly infringing conduct,' and we stop it when 'the lawsuit in which the defendant seeks to invoke the laches defense' is initiated."  *Id*. (quoting *Evergreen Safety Council*, 697 F.3d at 1226).  "If the most analogous state statute of limitations expired before the suit was filed, there is a strong presumption in favor of laches." *Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*, 894 F.3d 1015, 1025 (9th Cir. 2018).  However, a party with unclean hands may not assert laches.

*Jarrow*, 304 F.3d at 841.  A plaintiff may demonstrate the defendant has unclean hands by showing he or she willfully infringed on the plaintiff's mark.

12. AF presented insufficient evidence of confusion over this mark.

13. The Court finds that the mark "Church of Higher Spiritualism" was previously used by Mr. Lowndes, and that AF was aware of this for roughly twenty years prior to filing this suit.  AF has not been diligent in enforcing this mark.  Mr. Lowndes would clearly be prejudiced by AF's enforcement of this trademark as it would prevent him from continuing his religious teachings under that name.  AF failed to demonstrate Mr. Lowndes acted with unclean hands.  The doctrine of laches applies and bars AF's claim against Mr. Lowndes for trademark infringement.

14. AF has failed to prove damages for its trademark claim.

15. AF has failed to prove damages for unfair competition and false designation.

16. The Court, in its discretion, finds that neither side has demonstrated a reasonable basis for attorney fees under any statute or law.  AF has not succeeded on its claims.  AF's pursuit of these claims against Mr. Lowndes was based on a reasonable understanding of the law.  This is not an exceptional case.  The Court will not grant a motion for attorney's fees from either party based on the existing record.

17. There is no basis to issue an injunction against Mr. Lowndes for the works covered by the license.  To the extent evidence has been presented that Mr. Lowndes uploaded material not covered by the license, the Court finds that AF has failed to satisfy the remaining elements justifying an injunction, including harm to AF caused by Mr. Lowndes's actions.

18. Having fully considered the evidence presented at trial, the exhibits admitted into evidence, and the argument of counsel, and being fully advised, the Court finds against Plaintiff on all remaining claims.  Plaintiff has failed to demonstrate damages or any basis to issue an injunction.  The clerk shall enter judgment accordingly.  This matter is now CLOSED.

It is so ORDERED.

DATED this 14ᵗʰ day of June, 2022.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 12